UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Anna Maria Salinas, § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 4:17-CV-01134 |
| Nancy A. Berryhill, § | |
| Acting Commissioner of the § | |
| Social Security Administration, § | |
| *Defendant.* § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Anna Maria Salinas filed this case under the Social Security Act, 42 U.S.C. 405(g) for review of the Commissioner's final decision denying her application for social security disability insurance benefits and Supplemental Security Income. Dkt. 12-1. Salinas and the Commissioner moved for summary judgment. Dkt. Nos. 12-1, 15. After reviewing the record and the law, Salinas's motion should be granted, the Commissioner's motion denied, and the case remanded for further administrative proceedings.

### Background

Salinas filed claims for disability insurance benefits and supplemental security income on February 10, 2015, alleging disability beginning June 2, 2014. Salinas is over 40 years old, with a high school education, and last worked as a caregiver. Both of her claims were denied on initial review and reconsideration. A hearing was held before an administrative law judge ("ALJ"), and on November 2, 2016, the ALJ found that Salinas was not under disability.

The ALJ found at step 2 of the required sequential analysis (20 C.F.R. § 404.1520) that Salinas had the following severe impairments: a history of vaginal infections, degenerative disc disease, atypical chest pain, a history of anemia, vitamin D deficiency, a mood disorder, an anxiety disorder, and post-traumatic stress disorder. At step 3, the ALJ found that none of these impairments met or medically equaled any of the Agency's listed impairments. Dkt. 8-3 at 13.

The ALJ concluded that Salinas had a residual functional capacity ("RFC") to perform sedentary work, with the following exertional limitations: can lift and carry 10 pounds occasionally and 5 pounds frequently; can stand and walk about 2 hours in an 8-hour day, and sit for about 6 hours in an 8-hour day; can occasionally bend, stoop, crouch, and crawl; cannot climb ropes, ladders, and scaffolds. The ALJ also found that Salinas had no visual or environmental limitations and is capable of: understanding, remembering, and carrying out simple instructions; making simple decisions, and attending and concentrating for extended periods; interacting adequately with coworkers and supervisors; responding to changes in a routine work setting; and working in an environment with no more than occasional contact with the public.

Based on this RFC, the ALJ concluded at step 4 that Salinas could not perform her past relevant work. At step 5, the ALJ made alternate findings based on the vocational expert's testimony. It was concluded that Salinas could be employed as an optical goods worker, a jewelry preparer, or a sorter. Dkt. 8-3 at 16-17.

The Appeals Council denied Salinas's request for review. Salinas then filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g), 1383(c)(3).

**Standard of Review**

Section 405(g) of the Social Security Act governs the standard of review in disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

A claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). The commissioner applies a five-step sequential analysis to decide disability status. The claimant bears the burden of proof on the first four steps to establish that a disability exists. If successful, the burden shifts to the Commissioner, in step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 152 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts back to the claimant to show he is unable to perform the alternative work. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). Post hoc

rationalizations for an agency decision are not to be considered by a reviewing court. *SEC v. Chenery,* 332 U.S. 194, 196 (1947).

## Analysis

Salinas challenges the RFC determination --- that she was able to perform full-time sedentary work with modest restrictions --- because the ALJ failed to follow the proper legal standard in considering the opinion evidence of record, particularly that of the treating physician, Dr. Dimalibot.

In general, "the opinion of the treating physician is afforded controlling weight in the ALJ's decision if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (2000). The ALJ may discount, or even disregard entirely, the opinion of a treating physician only for good cause. *Brown v. Apfel*, 192 F3d 492, 500 (5th Cir. 1999). Good cause may be found if opinions are conclusory, not supported by medically acceptable clinical and laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Newton*, 209 F.3d at 456.

"Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating physician, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set for the in 20 C.F.R. § 404.1527(c)(2)." *Newton*, 209 F.3d at 453 (emphasis original) ("[F]actors that an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to 'controlling weight'" include: (1) the physician's length of treatment of the claimant,

4

(2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.).

Dr. Dimalibot began treating Salinas in January 2014 (Dkt. 8-11 at 15), and saw her thereafter on nearly a monthly basis. Dkt. 8-10 at 5-18. Dr. Dimalibot treatment notes consistently reflect a multitude of physical and mental problems, mostly associated with her uncontrolled diabetes mellitus. A major concern was recurrent and painful vaginal abscess, which resulted in hospital visits on 10/20/14 and 1/25/15. *Id*. at 6.

On March 2, 2015, Dr. Dimalibot completed a residual functional capacity assessment of Salinas, describing her various physical and mental limitations, such as the inability to walk half a block without rest or significant pain, the inability to sit for more than 4 hours or stand for more than 1 hour in a typical workday, the need to take unscheduled breaks every 2 hours, and the need to recline or lie down in excess of typical lunch or break periods. Her impairments were severe enough to frequently interfere with the attention and concentration required to perform simple work-related tasks. Dkt. 8-8 at 3-4; Dkt. 8-9 at 2-4. Most significantly of all, Dr. Dimalibot concluded that Salinas was physically incapable of working an 8 hour day, 5 days a week employment on a sustained basis. *Id.*

The ALJ did not give Dr. Dimalibot's opinion controlling weight: "Insofar as Dr. Dimalibot's opinion is inconsistent with the residual functional capacity found above, the Administrative Law Judge gives it little weight." Dkt. 8-3 at 25. This is not the standard.

5

A treating physician's opinion can be found not reliable if it is insufficiently substantiated by clinical or diagnostic evidence. Thus, the treating physician's opinion is required to be consistent with to the record's medical evidence, not the ALJ's RFC, in order to be given controlling weight. *See* 20 CFR § 404.1527(d)(2). At no point did the ALJ clearly point out any inconsistencies between Dr. Dimalibot's opinion and the record medical evidence. To the contrary, Dr. Dimalibot's conclusion that Salinas was capable only of part-time work was shared by Dr. Swanson, who gave Salinas a consultative psychological evaluation in May 2015. Dkt. 8-3 at 25.

The ALJ apparently based the RFC determination primarily upon the opinion of Dr. Anigbogu, a non-examining medical expert whose testimony was based on a review of the medical file. Dkt. 8-3 at 13-15. Yet no explanation was given why Dr. Dimalibot's opinion was subordinated to that of someone who never treated or examined the claimant.

Even though Dr. Dimalibot's opinion was not controverted by "reliable medical evidence from a treating or examining physician," the ALJ failed to perform the required six-factor analysis of the treating physician's views mandated by 20 CFR § 404.1527. Instead, the ALJ merely observed that Salinas's "diabetes mellitus and hypertension have not caused end organ damage." Dkt. 8-3 at 25. The ALJ made no attempt to explain how this observation undermines Dr. Dimalibot's opinion. The ALJ's opinion also cited a few benign observations made by Dr. Dimalibot at an early visit, without mentioning that the visit occurred prior to outbreak of the recurrent vaginal abscess that led to her repeated emergency room visits. Dkt. 8-9 at 19. Contrary to the suggestion in the ALJ's opinion, Dr. Dimalibot's treatment notes consistently reflect the disabling symptoms and severe

6

medical impairments claimed by Salinas, and amply support his opinion regarding her incapacity for full time work. Dkt. 16. at 3 (collecting record citations).

To be clear, the court is not re-weighing the evidence, but determining whether the correct legal standards were applied. 42 U.S.C. § 405(g). They were not. The ALJ has not offered legally sufficient grounds for rejecting the treating physician's medical opinions and relying instead upon non-examining sources. This does not comply with SSA regulations or Fifth Circuit precedent, and therefore remand is warranted. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (The ALJ must give good reasons for the weight given to treating sources and must examine the factors in doing so).

## Conclusion and Recommendation

For these reasons, Salinas's motion for summary judgment should be granted, and the Commissioner's motion for summary judgment denied. The Commissioner's final decision should be reversed and the case remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

The parties have 14 days from service of this memorandum and recommendation to file written objections. Failure to timely object will preclude appellate review of factual findings or legal conclusions, except for plain error. FED. R. CIV. P. 72.

Signed at Houston, Texas, on January 3, 2018.

Stephen Wm Smith
United States Magistrate Judge